IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW DAVIS, | ) | CASE NO.: 1:08 CV 776 |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| CITY OF ASHTABULA, et al., | ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

This matter is before the Court on a Motion for Summary Judgment filed by Defendants the City of Ashtabula, Ashtabula Police Sergeant Chad Brown, and former Ashtabula Police Sergeant Stephen Kaselak (collectively "Defendants"). (ECF # 63.)

## I. BACKGROUND[1]

On July 15, 2008, Plaintiff Matthew Davis filed an Amended Complaint against Defendants the City of Ashtabula, Sergeant Chad Brown, Sergeant Stephen Kaselak, and John Does 1-15. (ECF # 17.) In his introduction, Plaintiff alleges:

> This case is about the use of excessive force by Sergeant Stephen Kaselak and Sergeant Chad Browne [sic] of the Ashtabula Ohio Police Department. The deliberate use of force occurred during their arrest of [Plaintiff] on August 2, 2006. Both officer Kaselak and Browne [sic] acted in concert. The tools used to levy the excessive force against [Plaintiff] were a taser and a K-9 police dog. The dog repeatedly bit and mauled [Plaintiff] while he was paralyzed three times by the taser. Officer Kaselak, Officer Brown and the remaining Defendants acted willfully, wantonly, recklessly, maliciously and in bad faith. This case is also about the failure of the City of Ashtabula to adequately train and discipline these officers and its failure to provide [Plaintiff] with medical care while in jail. [Plaintiff] was charged with Domestic Violence and Resisting Arrest by these officers. He was found not

[1] The factual summary is based upon the parties' statements of facts. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

guilty by a jury on March 7, 2008.

(*Id.* at ¶ 1.) On this basis, Plaintiff attempts to set forth four counts for relief.

In Count I of the Amended Complaint, Plaintiff attempts to state a claim of excessive force against Defendants Sergeant Chad Brown, Sergeant Stephen Kaselak, and John Does under 42 U.S.C. § 1983.[2] (*Id.* at ¶¶ 25-30.) In Count II of the Amended Complaint, Plaintiff alleges that Defendant the City of Ashtabula failed to adequately train and supervise its police officers, also in violation of § 1983. (*Id.* at ¶¶ 31-35.) In Count III of the Amended Complaint, Plaintiff attempts to state a claim of assault and battery against Defendant Kaselak. (*Id.* at ¶¶ 36-39.) Finally, in Count IV of the Amended Complaint, Plaintiff alleges Intentional Infliction of Emotional Distress against Defendants Sergeant Brown, Sergeant Kaselak, and John Does.[3] (*Id.* at ¶¶ 40-41.) On July 28, 2008, Defendants the City of Ashtabula, Sergeant Brown, and Sergeant Kaselak filed an Answer to the Amended Complaint, denying all material allegations. (ECF # 18.)

On March 9, 2009, Defendants filed a Motion for Summary Judgment, asking this Court to grant judgment in their favor on all counts in the Amended Complaint. (ECF # 63.) Plaintiff filed an Opposition to the Motion on March 27, 2009. (ECF # 69.) On April 6, 2009, Defendants filed a Reply brief in support of the Motion. (ECF # 75.) Hence, the Motion for Summary Judgment has been briefed fully and is now ripe for consideration.

---

2 In Count I of the Amended Complaint, Plaintiff also argues that Defendants are liable based for a deprivation of medical care and an unreasonable seizure and arrest. Having presented no argument or evidence in support of these claims in opposition to Defendants' Motion for Summary Judgment, Defendants' Motion is **GRANTED** as to that portion of Count I, and that portion of Count I is hereby **DISMISSED**.

3 Because discovery has closed in the instant case, and Plaintiff has yet to identify the John Does in the Amended Complaint, those defendants are hereby **DISMISSED** from this action.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most

civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn

> or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. It is with this standard in mind that the instant Motion must be decided.

## III. DISCUSSION

### A. Count I: Excessive Force Under 42 U.S.C. § 1983

In Count I of the Complaint, Plaintiff attempts to state a claim for excessive force under 42 U.S.C. § 1983 against the Defendant Police Officers. Plaintiff's excessive force claim is governed by the Fourth Amendment. *See Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). Under the Fourth Amendment, a police officer's use of force must be objectively reasonable. *See id.* That is, courts evaluating an officer's use of force must balance the consequences to the individual against the government's interests in effecting the seizure. *See id.* As such, there is a "built-in measure of deference to the Officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *See id.*

In this case, Plaintiff insists that he did not resist during his arrest, and that the Defendant Police Officers and the police dog, named Eno, unjustifiably attacked him, causing him injury. In particular, Plaintiff claims that, although unprovoked, Defendant Kaselak grabbed him by the hand, spun him around and threw him to the ground, causing him to strike his head on the pavement. (ECF # 69 at 3.) Plaintiff further alleges that, as he was brought to the ground, the police dog exited the police vehicle and began biting him. (*Id.*) According to Plaintiff, Defendant Brown later arrived on the scene, firing "[t]hree taser shots . . . deliberately and directly into [his] body." (*Id.* at 4-5.) Plaintiff states that he reached back and grabbed the dog's snout to hold its mouth shut, in an effort to prevent further injury. (*Id.* at 4.) Despite his efforts to avoid injury from the dog, Plaintiff claims that the dog continued to bite him, even while he was being tasered. (*Id.* at 5.)

In contrast, Defendants have a different version of the facts. In the Motion for Summary

Judgment, Defendants state:

> Sgt. Kaselak ordered the Plaintiff to put his hands behind his back, but he refused; the Sgt. tried putting the Plaintiff's hands behind his back, but the Plaintiff tensed up and brought his arms together. The Plaintiff then grabbed for his cell phone which he had placed on the hood of the car, and Sgt. Kaselak again ordered him to put his hands behind his back. Instead of complying with that order, the Plaintiff struggled with Sgt. Kaselak, who kept telling him to stop resisting and put his hands behind his back. Sgt. Kaselak was not able to force the Plaintiff's hands behind his back, and so the sergeant decided to take him to the ground to gain control of him.
>
> However, the Plaintiff continued struggling with Sgt. Kaselak on the ground, and Eno deployed from the car and engaged the Plaintiff on the leg as trained. . . . Eno, upon perceiving the threat on his handler, engaged as he was trained, held the engagement, and re-bit as the Plaintiff fought to get away from the officer and dog. . . .
>
> As Sgt. Kaselak continued to try handcuffing him, the Plaintiff refused to stop resisting. Officer Brown arrived on the scene and, as he ran up and saw the two men and the dog on the ground, he could hear Sgt. Kaselak telling the Plaintiff to put his hands behind his back. Officer Brown told the Plaintiff to put his hands behind his back right away, but the Plaintiff again refused. Officer Brown then shot the Plaintiff with his department-issued Taser, but the Plaintiff still would not follow directions, so the officer gave him a second burst with the Taser. After the second burst, Officer Brown allowed the Plaintiff to comply, but he still would not. Seeing that the Plaintiff had grabbed Eno around his nose, Officer Brown administered one more burst from the Taser. After that, the officers were able to put the Plaintiff in handcuffs.

(ECF # 63 at 3-5 (citations omitted).) Hence, the Defendant Police Officers assert that their actions were taken to restrain Plaintiff, who was resisting arrest. (*Id.*)

Viewing the evidence in the light most favorable to Plaintiff, this Court finds that a jury could determine that the conduct of the Police Officer Defendants was not objectively reasonable under the circumstances. That is, if a jury were to believe that Plaintiff did not resist his arrest, the use of force could be found to constitute unreasonable and excessive force under the circumstances. Accordingly, a genuine issue of material fact remains regarding the excessive use of force under the Fourth Amendment.

The Court also finds that, despite their arguments to the contrary, the Defendant Police Officers are not entitled to summary judgment with respect to this claim based upon qualified immunity. Where there exists a genuine issue of material fact as to whether excessive force was used, summary judgment is properly denied as to the issue of qualified immunity. *See Wilhelm v. Clemens*, No. 3:04 CV 7562, 2006 WL 2619995, at *7 (N.D. Ohio Sept. 13, 2006); *see also Bell v. City of Cleveland*, No. 1:07CV3244, 2009 WL 281066, at *4 (N.D. Ohio Feb. 4, 2009) (denying request for qualified immunity where genuine issue of material fact remained as to officer's conduct). As such, the Motion for Summary Judgment with respect to Count I of the Amended Complaint is **DENIED.**

**B. Count II: Failure to Train and Supervise Under 42 U.S.C. § 1983**

In Count II, Plaintiff claims that the City of Ashtabula fails to train, supervise, and discipline its officers concerning the constitutional limitations of their actions. In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court formally recognized the failure to train theory, but restricted its application to cases "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 380-81. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. Instead, a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Based upon the foregoing, even if Plaintiff is able to establish a § 1983 claim against the Defendant Police Officers, the claim against the City cannot proceed unless Plaintiff offers evidence of a City policy or custom resulted in the injuries alleged. Here, Plaintiff contends that the City is liable under § 1983 because it ratified the behavior of Defendant Kaselak. The sole evidence Plaintiff offers in support of this claim arises from a prior lawsuit filed against Defendant Kaselak, which was settled and dismissed. Mere allegations arising in another lawsuit are insufficient to create a genuine issue of material fact with respect to this claim. Further, Plaintiff's suggestion that Defendant Kaselak's deployment of Eno on eight other occasions may have been improper does not constitute evidence in support of this claim. Accordingly, the Motion for Summary Judgment as to Count II of the Amended Complaint is **GRANTED.**

**C. State Law Claims**

Plaintiff attempts to state two causes of action arising under Ohio law. Specifically, in Count III of the Amended Complaint, Plaintiff attempts to state a claim of assault and battery against Defendant Kaselak. In Count IV of the Amended Complaint, Plaintiff alleges Intentional Infliction of Emotional Distress ("IIED") against Defendants Brown and Kaselak. The Court addresses these claims in turn.

**1. Count III: Assault and Battery Under Ohio Law**

There is no dispute that, under Ohio law, a claim for assault and battery must be brought within one year after the claim accrues. *See* O.R.C. § 2305.111(A). In this case, the events giving rise to Plaintiff's Amended Complaint occurred on August 2, 2006. (ECF # 17 at ¶ 1.) Because Plaintiff did not file the original Complaint until March 27, 2008, Defendants claim that the cause of action for assault and battery is barred by the statute of limitations. (ECF # 21 at 2.)

To the contrary, Plaintiff argues that the statute of limitations should be tolled with respect to this claim, in accordance with O.R.C. § 2305.15(A). That provision provides:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action . . . does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

O.R.C. § 2305.15(A). Plaintiff thus argues that, by leaving the state, Defendant Kaselak tolled the limitations period. (ECF # 53 at 3, ECF # 69 at 29.)

Under the plain language of the statute, an individual's absence from the state tolls the statute of limitations. *See Wetzel v. Weyant*, 41 Ohio St.2d 135, 135 (Ohio 1975). The Supreme Court of Ohio has not required, as a prerequisite to the application of the statute, a showing that the defendant left the state to evade suit or for other improper reasons. *See Johnson v. Rhodes*, 89 Ohio St. 3d 540, 542 (2000).[4] Because Plaintiff has offered sufficient evidence that Defendant Kaselak was absent from the state prior to the close of the limitations period, the Court finds that the statute of limitations is tolled with respect to this claim.

"Battery" is defined as "an intentional, unconsented-to contact with another." *Snyder v. Turk*, 90 Ohio App. 3d 18, 23 (1993). Liability for the intentional tort of battery occurs when

---

[4] Although Defendants argue that the statute is unconstitutional as applied in this case because Defendant Kaselak allegedly left the state due to reasons that fall within the reach of interstate commerce, the Court finds this argument to be unpersuasive. This Court is bound to apply state law in accordance with the currently controlling decisions of the state's highest court. *See Bailey Farms, Inc. v. NOR-AM Chemical Co.*, 27 F.3d 188, 191 (6th Cir. 1994). Here, the Supreme Court has held that the statute should be applied literally, and has not carved out an exception to the statute where an individual leaves the state for employment purposes. *See Johnson v. Rhodes*, 89 Ohio St. 3d 540, 542 (2000).

there is a harmful or offensive contact. *See Love v. Port Clinton*, 37 Ohio St. 3d 98, 99 & n.3 (1988); Restatement (Second) of Torts §§ 13, 19, 35 (1965); *see also Scott v. Perkins*, 74 Ohio Op. 2d 280 (App. 1975). Similarly, assault is the beginning of an act which, if consummated, would constitute battery. *See Smith v. John Deere Co.*, 83 Ohio App. 3d 398, 406 (1993). A key element of assault is that the alleged tortfeasor "knew with substantial certainty that his or her act would bring about harmful or offensive contact." *Id.* The act must also be such as to cause reasonable fear of immediate physical violence. *See Ryan v. Conover*, 59 Ohio App. 361 (1937). The key to both torts is the element of intent. In Ohio, "it is well-established that intent to inflict personal injury upon another is an essential element of an action based upon assault and battery." 6 Ohio Jur. 3d § 5 at 103-104 (1980).

In this case, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has set forth sufficient evidence to create a genuine issue of material fact as to his claim of assault and battery. As with Plaintiff's claim of excessive force, if a jury were to believe that Plaintiff did not resist his arrest, Defendant Kaselak's conduct could be found to constitute assault and battery under Ohio law. Further, Defendant Kaselak is not entitled to summary judgment on qualified immunity under Chapter 2744, because Plaintiff has set forth evidence sufficient to raise a genuine issue of material fact as to whether Defendant Kaselak acted in a reckless or wanton manner. *See Ruth v. Jennings*, 136 Ohio App.3d 370, 375-76 (4th Dist. 1999). Thus, the Motion for Summary Judgment with respect to Count III of the Amended Complaint is **DENIED.**

**2. Count IV: Intentional Infliction of Emotional Distress under Ohio Law**

In ruling on a Motion for Judgment on the Pleadings in this case, this Court found that

Plaintiff's IIED claim rests upon the same allegations as the assault and battery claim and, as such, a one-year statute of limitations applies. For the reasons set forth in the preceding subsection of this Opinion and Order, the Court finds that the statute of limitations is tolled with respect to this claim against Defendant Kaselak.

As to Defendant Brown, however, the statute of limitations applicable to the IIED claim has expired. Plaintiff has failed to present any argument or evidence demonstrating that the limitations period should be tolled with respect to this claim. Accordingly, the Motion for Summary Judgment is **GRANTED** as to the IIED claim against Defendant Brown.

The Supreme Court of Ohio, in *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America, et al.*, 6 Ohio St. 3d 369, 374 (1983), set forth the elements of IIED. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. . . ." *Id.* at 374 (citing Restatement (Second) of Torts § 46(1) (1965)). Emotional distress is severe if "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh et al. v. Hanks et al.*, 6 Ohio St. 3d 72, 78 (1983). Examples of serious emotional distress "include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.*

In the instant matter, the Court finds that Plaintiff provides adequate evidence to proceed on the IIED claim against Defendant Kaselak. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury may find that the circumstances here are such that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the case. Further, as stated above, Defendant Kaselak is not entitled to summary

judgment on qualified immunity under Chapter 2744, because Plaintiff has set forth evidence sufficient to raise a genuine issue of material fact as to whether he acted in a reckless or wanton manner. *See Jennings*, 136 Ohio App.3d at 375-76. Thus, the Motion for Summary Judgment as to the IIED claim against Defendant Kaselak is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part. (ECF # 63.) In particular, the Motion for Summary Judgment is **DENIED** as to Plaintiff's claim for excessive force under 42 U.S.C. § 1983, and the assault and battery and IIED claims under Ohio law against Defendant Kaselak. The Motion is **GRANTED**, however, as to Plaintiff's failure to train and supervise claim under § 1983 and the IIED claim against Defendant Brown. The case shall proceed to a jury trial on the remaining claims at **8:30 a.m.** on **September 14, 2009.**

IT IS SO ORDERED.

Donald C. Nugent

DONALD C. NUGENT
United States District Judge

DATED: June 29, 2009